**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: October 21, 2022
Date Decided: January 10, 2023

Kurt M. Heyman, Esquire
Melissa N. Donimirski, Esquire
Heyman Enerio Gattuso
  & Hirzel LLP
300 Delaware Avenue, Suite 200
Wilmington, Delaware 19899

Stamatios Stamoulis, Esquire
Stamoulis & Weinblatt, LLC
900 North West Street, 3rd Floor
Wilmington, Delaware 19801

RE:     *Cardinale v. Feingold et al.*,
        C.A. No. 2022-0133-LWW

Dear Counsel:

This is a statutory proceeding pursuant to 6 *Del. C.* §§ 18-110 and 18-111. The defendants concede that the plaintiff is the sole manager of the six entities at issue. The remaining live dispute concerns whether certain books and records of the entities remain in the defendants' possessions.

After reviewing the record, I conclude that there is no actual case or controversy underlying the plaintiff's declaratory judgment claim. This action is therefore dismissed.

## I.     BACKGROUND

Plaintiff Richard Cardinale brings this action in his capacity as a member and manager of six Delaware limited liability companies (the "Alternative Global

Companies").[1]  The plaintiff alleges that on January 28, 2022, defendants David Feingold and Michael Dazzo resigned as managers and withdrew as members of the Alternative Global Companies, leaving Cardinale as the sole manager and member.[2]

Cardinale filed his Verified Complaint on February 8, 2022 and advances a single claim for declaratory relief pursuant to Sections 18-110 and 18-111 of the Delaware Limited Liability Company Act.[3]  He alleges that he "is entitled to a declaratory judgment declaring him the sole Managing Member of the [Alternative Global] Companies, with exclusive authority to maintain possession, custody and control over all assets—including  books, records and bank accounts—belonging to the [Alternative Global] Companies."[4]  In his request for relief, Cardinale also asks that the court order the defendants to return "all of the [Alternative Global] Companies' books, records and any other asset" to him.[5]

---

[1] Those companies are: Alternative Global One, LLC; Alternative Global Two, LLC; Alternative Global Three, LLC; Alternative Global Four, LLC; Alternative Global Five, LLC; and Alternative Global Six, LLC.  Verified Compl. Pursuant to 6 Del. C. §§ 18-110 & 18-111 (Dkt. 1) ("Compl.") ¶ 1.

[2] *Id.* ¶ 2.

[3] 6 *Del. C.* §§ 18-110, 18-111.

[4] Compl. ¶ 21.

[5] *Id.*

The defendants subsequently moved for dismissal or a stay of this action in deference to earlier-filed litigation pending in the United States District Court for the Southern District of Florida.[6] In the Florida litigation, Feingold and Dazzo allege that Cardinale fraudulently charged them for keeping back-office books and records—the same records, they say, that Cardinale seeks here. The defendants' motion to dismiss briefing explicitly acknowledges that they validly resigned as managers and withdrew as members of the Alternative Global Companies.[7]

Separately, Cardinale moved for summary judgment in this court. He asks that I enter an order confirming that he is the Alternative Global Companies' manager and that the defendants unambiguously resigned under the terms of the entities' respective limited liability company agreements. He asserts that the defendants have "conceded" as much "in filings with *two* courts."[8] Cardinale also requests an order requiring the defendants to turn over any Alternative Global Companies' books and records to him.[9]

The parties fully briefed both motions. After reviewing their briefs and hearing oral argument on a motion to stay discovery, two issues became clear.

---

[6] Defs.' Opening Br. in Supp. of Mot. to Dismiss (Dkt. 19) ("Defs.' Opening Br.") 12.

[7] *Id.* at 5-6.

[8] Pl.'s Opening Br. in Supp. of Pl.'s Mot. for Summ. J. (Dkt. 21) 12.

[9] *Id.* at 14.

First, the parties agree that the defendants validly resigned as managers (and withdrew as members) of the Alternative Global Companies as of January 28, 2022.[10] There is no question that Cardinale is the entities' manager. Second, the sole dispute—and focus of the parties' briefing—concerns whether the defendants have provided all Alternative Global Companies' books, records, and assets in their possession to Cardinale.

On October 7, 2022, I sent a letter to the parties asking whether the plaintiff was seeking "an advisory opinion or . . . ancillary relief for a claim that lacks a justiciable Section 18-110 or 18-111 controversy."[11] I gave the parties an opportunity to submit supplemental memoranda "addressing whether there is an actual case or controversy under Section 18-110 or 18-111 and whether this court has subject matter jurisdiction to issue a declaratory judgment."[12] The parties' submissions were filed on October 21.[13]

---

[10] *See, e.g.*, *id.* at Ex. A ¶¶ 40, 50; *Cardinale v. Feingold*, C.A. No. 2022-0133-LWW, at 12 (Del. Ch. Sept. 16, 2022) (TRANSCRIPT) ("I think if we were talking about whether he's the proper manager of the [Alternative Global] companies, I don't think we would even need to have this [litigation]."); Defs.' Opening Br. 5-6 (describing the defendants' resignations from the Alternative Global Companies and efforts to procure "fair value for their membership interests" among other prayers for relief in the Florida action).

[11] *See* Dkt. 45.

[12] *Id.* at 4.

## II.    ANALYSIS

The Court of Chancery is a court of limited jurisdiction.  Jurisdiction only exists where "(1) 'a plaintiff states an equitable claim,' (2) 'a plaintiff requests equitable relief and there is no adequate remedy at law,' or (3) 'jurisdiction exists by statute.'"[14]  Cardinale invokes the third type of jurisdiction—specifically, under 6 *Del. C.* §§ 18-110 and 18-111.  Nonetheless, the court is required to ensure that subject matter jurisdiction exists, "even if it must raise the issue *sua sponte*."[15]

"Section 18-110 grants this court jurisdiction 'to determine who validly holds office as a manager of a Delaware limited liability company.'"[16]  Section 18-111 provides for jurisdiction in matters involving, among other things: the interpretation, application, or enforcement of a limited liability company agreement; and the rights, powers, or restrictions of the LLC or its members or

---

[13] *See* Dkts. 46, 47.

[14] *Takeda Pharms. U.S.A., Inc. v. Genentech, Inc.*, 2019 WL 1377221, at *4 (Del. Ch. Mar. 26, 2019) (quoting *Delawareans for Educ. Opportunity v. Carney*, 2018 WL 4849935, at *5 (Del. Ch. Oct. 5, 2018)).

[15] *Critchfield v. Engfer*, 2016 WL 2755933, at *1 (Del. Ch. May 9, 2016); *see* Ct. Ch. R. 12(h)(3) ("Whenever it appears by the suggestion of the parties or otherwise that the Court lacks jurisdiction of the subject matter, the Court shall dismiss the action.").

[16] *Avgiris Bros., LLC v. Bouikidis*, 2022 WL 4672075, at *16 (Del. Ch. Sept. 30, 2022) (quoting *Feeley v. NHAOCG, LLC*, 2012 WL 966944, at *5 (Del. Ch. Mar. 20, 2012)).

managers.[17]  There must be an actual controversy present for the court to exercise declaratory judgment jurisdiction.[18]

There is, however, no disagreement over the identity of the Alternative Global Companies' manager.  The parties agree it is Cardinale.  Feingold and Dazzo acknowledge that they validly resigned and insist that their "resignations have always been clear and unmistakable."[19]  That leaves the question of whether the court has jurisdiction to address the defendants' alleged possession of company books and records that Cardinale needs to fulfill his role as manager.[20]

A proceeding under Section 18-110 is narrow in scope.  The statute limits the court's enforcement of "the production of any books, papers and records of the limited liability company" to situations "relating to the issue" of determining an entity's manager where "more than [one] person" claims that role.[21]  The statute

---

[17] *See* 6 *Del. C.* § 18-111.

[18] *See Klein v. ECG Topco Hldg., LLC*, 2022 WL 2659096, at *2 (Del. Ch. July 8, 2022) ("This court has subject matter jurisdiction over a declaratory judgment action where, among other things, an 'actual controversy' exists between the parties."); *Lynch v. Gonzalez*, 2020 WL 5648567, at *6 (Del. Ch. Sept. 22, 2020).

[19] *See* Dkt. 46 ¶ 8.

[20] The plaintiff originally sought injunctive relief to this effect.  Now, he asks for declaratory relief.  *See* Dkt. 47 at 7-8.

[21] 6 *Del. C.* § 18-110(a) ("[T]he Court of Chancery may hear and determine the validity of any admission, election, appointment, removal or resignation of a manager of a limited liability company, and the right of any person to become or continue to be a manager of a limited liability company, and, in case the right to serve as a manager is claimed by more

does not provide for jurisdiction where the manager of the entity is certain and the sole disagreement concerns the collateral issue of books and records.[22]

Cardinale cites to precedent where the court indicated that an order transferring possession of company records would accompany relief in proceedings under 8 *Del. C.* § 225—the corporate analog to Section 18-110.[23] Each of those cases involves an actual controversy about the identity of the entity's lawful officers or directors. No such controversy exists here.

In terms of Section 18-111, Cardinale is not asking the court to interpret a provision of the Alternative Global Companies' LLC agreements concerning his right to access company records.[24] He is—arguably and viewing the statute

---

than 1 person, may determine the person or persons entitled to serve as managers; and to that end make such order or decree in any such case as may be just and proper, with power to enforce the production of any books, papers and records of the limited liability company relating to the issue.").

[22] *See Avgiris Bros.*, 2022 WL 4672075, at *16 (declining to issue relief concerning whether removed managers were obligated to return company property and explaining that Section 18-110 "does not address the retention of property by [former] managers or dictate what is required in that regard of managers who have been properly removed").

[23] *See Arbitrium (Cayman Islands) Handels AG v. Johnston*, 1997 WL 589030, at *4 (Del. Ch. Sept. 17, 1997) (discussing a hypothetical scenario in a Section 225 action where "if the defendants, in their representative (as opposed to personal) capacities, were ordered to turn over operational control of the corporation (including custody of its books, records, and physical premises) to the plaintiffs, and if the defendants refused to do so, they could properly be held in contempt of that injunctive order"); *see also Technicorp Int'l II, Inc. v. Johnston*, 2000 WL 713750, at *8 (Del. Ch. May 31, 2000).

[24] He cites to Section 4.3 of the LLC agreements regarding resignation. *See* Compl. ¶ 20.

broadly—asking for a declaration regarding his "rights or powers" as manager of the Alternative Global Companies.[25]  But, again, there is no dispute about the rights or powers possessed by Cardinale as manager.  The parties' disagreement is limited to whether Cardinale is being deprived of unspecified company materials.[26]

Because the materials at issue are allegedly in the possession of former managers and members, Section 18-305 is inapt.  Cardinale can, however, file an appropriate claim in the proper court if he believes that the defendants wrongly retain Alternative Global Companies' property.[27]  In fact, this very issue appears to be raised in the ongoing Florida litigation.  But whether Feingold and Dazzo must turn over certain documents to Cardinale—where there is no actual controversy that Cardinale is the sole manager—is beyond the scope of this statutory proceeding.[28]

---

[25] 6 *Del. C.* § 18-111; *see* Compl. ¶ 20.  Notably, Cardinale's summary judgment briefing did not directly address the relief he seeks under Section 18-111.  His Complaint also notes that Section 18-111 empowers the court to address the "duties, obligations or liabilities among members or managers" but the defendants no longer hold those positions.  Compl. ¶ 19.

[26] *See* Dkt. 43.  The parties also debate whether Cardinale fraudulently charged to maintain these books and records—a matter being addressed in the Florida litigation.

[27] To the extent that the plaintiff seeks replevin of company property, that is a claim at law.  *See generally In re Markel*, 254 A.2d 236, 239 (Del. 1969); *Girard Bank of Delaware, N.A. v. Taubler*, 1983 WL 142521, at *1 (Del. Ch. Dec. 20, 1983).

[28] *See Palmer v. Arden-Mayfair, Inc.*, 1978 WL 2506, at *7 (Del. Ch. July 6, 1978) (discussing, in the Section 225 context, that the court cannot issue declaratory relief

## III.   CONCLUSION

Accordingly, the court lacks jurisdiction over the plaintiff's declaratory judgment claim.[29]   This action is dismissed without prejudice to the plaintiff's ability to pursue any claim regarding the Alternative Global Companies' books, records, and assets in the appropriate court.

To the extent necessary for the foregoing to take effect, IT IS SO ORDERED.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor

---

"where no actual controversy exists"); *Avgiris Bros.*, 2022 WL 4672075, at \*16 (holding that ancillary relief regarding possession of company property was "beyond the scope" of a Section 18-110 proceeding).

[29] *See Baring v. Condrell*, 2004 WL 2340047, at \*3 (Del. Ch. Oct. 18, 2004) (stating, in a Section 225 action, that "[i]n order for a court to exercise declaratory judgment jurisdiction there must be an actual controversy").